### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUNDBOARD ASSOCIATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES FEDERAL TRADE<br>   COMMISSION, )<br><br>Defendant. )<br>) | Case No. 1:17-cv-00150-APM |

### PLAINTIFF'S REPLY IN SUPPORT OF ITS
### MOTION FOR INJUNCTION PENDING APPEAL

This Court's April 24 decision and order is not as "*plainly* correct" as the FTC would have it. ECF No. 25, FTC Opp'n, at 1. Right now, outbound telemarketing sales calls made using soundboard technology are legal. But once the FTC's letter of November 10, 2016 takes effect (currently scheduled for May 19, per this Court's order of May 3), that will no longer be true. The reason it will no longer be true is because, in its November letter, the FTC said so. Why this — a new substantive legal requirement (*thou shall not use soundboard to make outbound sales calls*), coupled with a 6-month "compliance" deadline — is not *per se* legislative rulemaking is not at all "plain" to SBA or its members. It also runs afoul of D.C. Circuit precedent.

Elevating irony above fact, the FTC says in opposition to SBA's modest request to keep the status quo in place pending appeal that SBA has changed its argument. That is incorrect. We address here the statements deserving brief rebuttal to clarify SBA's position.

### ARGUMENT

*1. The term "prerecorded message" is a term of art.* The FTC asserts that SBA "[f]or the first time" denies that soundboard audio clips are "messages." *Id.* at 5. That assertion is impossible to square with SBA's statement that soundboard uses "prerecorded sounds, words,

phrases, and sentences *to form messages*." ECF No. 23, Pl.'s Mot. for Inj. Pending Appeal, at 10.

Of course soundboard calls deliver messages. The two key differences from a robocall, however,

are that a soundboard call is not automated and the message as a whole is not prerecorded. Like a

human reading from a menu of pre-written scripts, a human soundboard operator plays various

audio clips to make interactive conversation. Messages are formed, but only in the same way any

two-way communication evolves, in reaction to what the other speaker is saying. This is not a

"new argument," FTC Opp'n at 5; it has been SBA's position from the beginning. *See, e.g.*, ECF

No. 4-2, Pl.'s Br., at 27 ("A soundboard call is, rather, a customized call, controlled by a live

agent, that utilizes short audio clips to augment what is already a two-way communication.").

     The FTC cites (for the first time) to the dictionary definition of "message" to make its

point that soundboard calls fall within the scope of the prohibition. FTC Opp'n at 5. But

"prerecorded message" as used in the Telemarketing Sales Rule ("TSR") was and always has

been a term of art specific to the evil on which the FTC was laser-focused in crafting its rule:

one-way, prerecorded communications that do not involve any human interaction (*i.e.*,

robocalls). The preamble to the 2008 rulemaking emphasized, for instance, that "prerecorded

calls 'are by their very nature one-sided conversations.'" 73 Fed. Reg. 51164, 51167 (Aug. 29,

2008) (quoting Cmt. No. 529, filed by National Consumers League). And the FTC cited an

industry comment for the proposition that prerecorded messages are "nothing other than

outbound streaming audio files which convert the telephone (traditionally an instrument of two-

way communication) into a radio (an instrument for listening," and that "[t]hese [robocall]

campaigns are widely regarded as a nuisance and a burden to consumers because consumers are

powerless to interact with them." *Id.* at 51173 (quoting Cmt. No. 571, filed by Interactions

Corp.). The FTC's regulatory concern was that "a consumer right to privacy may be exacerbated immeasurably when there is no human being on the other end of the line." *Id.* at 51180.[1]

The robocall prohibition thus targets the uniquely intrusive effects of receiving a call when no one else is on the line, *i.e.*, a "robocall." When an agency writes a term into a regulation and, in so doing, gives that term a narrow and particularized meaning, it may not later pretend as though it did not constrain the term's meaning; as though the term has always been susceptible to the interpretation advanced by the agency after the fact. *See Nat'l Family Planning & Reproductive Health Ass'n v. Sullivan*, 979 F.2d 227, 236, 239 (D.C. Cir. 1992). To do so would be to amend the regulation by augmenting its scope. And that is the hallmark of a legislative rule. *See id.* at 236 ("[An agency] may not constructively rewrite [a] regulation, which was expressly based upon a specific interpretation of the statute, through internal memoranda or guidance directives that incorporate a totally different interpretation and effect a totally different result.").

To the extent there is ambiguity to the term "prerecorded message" when read in isolation, the preamble resolved it. Time and again, the D.C. Circuit has held that statutes and regulations, ambiguous on their faces, may be disambiguated by their preambles. *See, e.g.*, *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) ("[T]he preamble to a regulation is evidence of an agency's contemporaneous understanding of its proposed rules."); *Ass'n of Am. R.R.'s v. Surface Transp. Bd.*, 237 F.3d 676, 680 (D.C. Cir. 2001) (rejecting

---

[1] In its November letter and this litigation, the FTC has presented the case that soundboard calls are no less annoying than "standard robocalls." *See, e.g.*, FTC Opp'n at 6 n.2. Whatever truth there may be to that point is irrelevant. No doubt, many (perhaps most) consumers feel the same about telemarketing calls of any type, including where a human is doing the talking. If there are other evils to cure, then the FTC may go forth and try to cure them. But it must do so properly; it is not free to expand its existing regulatory reach absent notice-and-comment rulemaking.

agency's construction of ambiguous statutory term because construction was inconsistent with statute's preamble). Just so here.

Moreover, the same FTC staff that now tries to run very far from the understanding of the robocall prohibition that everyone shared back in 2008 itself had confirmed, in a 2009 letter, that the robocall prohibition did not encompass soundboard calls. That letter is clear as can be: "[T]he 2008 TSR amendments . . . do not prohibit telemarketing calls using [soundboard] technology." ECF No. 1-3, 2009 Letter, at 3. The FTC did not frame its 2009 statement as a discretionary interpretation of an ambiguous term, subject to future change. Its earlier letter simply stated that soundboard technology was not covered by the robocall prohibition. Courts will ordinarily give substantial weight to a contemporaneous agency interpretation of a statute the agency administers, *see United States v. Kanchanalak*, 192 F.3d 1037, 1045 n.15 (D.C. Cir. 1999), and that is what this Court should do with respect to the 2009 letter.

*2. SBA's claim has always been focused on the procedural defect to the November letter.* The FTC also misleads in contending that SBA, in the motion now before the Court, "attempts to repackage its claim as a procedural one," *i.e.*, that the November 10 letter "amounts to a substantive amendment" of the TSR's robocall prohibition. FTC Opp'n at 4. *From the beginning* of this case, SBA's claim has been that the November letter fails on procedural grounds, namely that it amounts to a substantive amendment to the TSR but was procedurally improper because it was not promulgated pursuant to public notice and comment, as required by statute. *See* ECF No. 1, Compl., at ¶¶ 65–68; Pl.'s Br. at 37. Nothing has been repackaged for SBA's current purposes.

*3. That SBA member companies face imminent, irreparable harm can hardly be doubted.* The FTC contends that SBA's claims of imminent, irreparable harm are overblown, but the threat the FTC's new enforcement stance poses is obvious on its face. The FTC has substantial enforcement

heft. *See* ECF No. 12, Pl.'s Reply, at 14 n.4. This Court's recognition that the November letter "puts the telemarketing industry to the painful choice between costly compliance and the risk of prosecution at an uncertain point in the future," ECF No. 19, Mem. Op., at 18, exposes the fallacy that the FTC is here promoting, to wit, that industry can blithely continue using soundboard because no real harm will hit until the Commission votes out an enforcement action. *See* FTC Opp'n at 8. Reality and common sense dictate that law-abiding operators, once it becomes clear a practice is not legal, will cease the practice. And thus it is that SBA member companies will be forced to lay off many of their employees. *See, e.g.*, ECF No. 4-3, Decl. of Arthur F. Coombs III ¶ 33; ECF No. 4-4, Decl. of Scot Stepek ¶ 11. This impending harm justifies injunctive relief.[2]

    *4. SBA's request for temporary relief is limited to the November letter.* Finally, lacking bona fide reasons to object to temporary injunctive relief on equitable or public-interest grounds, the FTC erects a straw man, contending that the relief SBA seeks would interfere with the FTC's prosecutorial discretion. FTC Opp'n at 13. Not so. SBA's request for injunctive relief is limited to the effect of the November letter. Obviously, the FTC may take whatever enforcement action it wants, whenever it wants, under whatever theory it wants, and any such action will stand or fall accordingly if contested. Here, SBA seeks only to remove from the FTC's vast enforcement arsenal, pending appeal, the November letter.

## CONCLUSION

    This Court should grant SBA's motion and enjoin the FTC from implementing the November letter until SBA's appeal is finally resolved.

---

[2] The FTC insists that soundboard has many other uses. *See* FTC Opp'n at 9–10. That is true. But as the FTC surely knows, the economics of these businesses are weighted heavily on the sales-side. Pending appeal, SBA's unrebutted declarations attesting to harm, as well as principles of equity, militate in favor of maintaining the status quo.

Date: May 8, 2017                    Respectfully submitted,

                                     */s/ Daniel W. Wolff*
                                     Daniel W. Wolff (D.C. Bar. No. 486733)
                                              dwolff@crowell.com
                                     Peter B. Miller
                                     Mark R. Thomson
                                     CROWELL & MORING LLP
                                     1001 Pennsylvania Avenue, N.W.
                                     Washington D.C. 20004-2595
                                     Phone: 202-624-2500
                                     Fax: 202-628-5116

                                     *Attorneys for Plaintiff*
                                     *Soundboard Association*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2017, Plaintiff Soundboard Association filed the foregoing document through the United States District Court ECF System to be served by CM/ECF electronic filing on all counsel of record.

<u>*/s/ Daniel W. Wolff*</u>
Daniel W. Wolff

DCACTIVE-40479278.1