# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| **SOUNDBOARD ASSOCIATION,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00150 (APM) |
| | ) | |
| **U.S. FEDERAL TRADE COMMISSION,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

On April 24, 2017, this court rejected Plaintiff Soundboard Association's challenge under the Administrative Procedure Act to a letter issued by the staff of Defendant Federal Trade Commission ("FTC"). The letter announced that the FTC staff now viewed telemarketing calls using soundboard technology—a technology by which telemarketers use a combination of prerecorded audio clips and live sales agents to contact and communicate with consumers—as subject to the same restrictions placed on traditional robocalls, in which a live sales agent never interacts with the consumer. *Soundboard Ass'n v. U.S. Fed. Trade Comm'n*, No. 17-cv-00150, 2017 WL 1476116, at *1 (D.D.C. Apr. 24, 2017). As pertinent here, the court held that the FTC staff's letter, dated November 10, 2016 ("November 2016 Letter"), was not a legislative rule requiring notice and comment, but instead was an interpretive rule that the agency was free to issue outside such formal process. *Id*. at *2.

Plaintiff believes the court got it wrong, and now seeks to enjoin the November 2016 Letter pending review on appeal. Pl.'s Mot. for Inj., ECF No. 23 [hereinafter Pl.'s Mot.]. For

the reasons explained below, the court denies Plaintiff's Motion for an Injunction Pending Appeal.

I. **LEGAL STANDARD**

Rule 62(c) of the Federal Rules of Civil Procedure authorizes a district court to issue an injunction pending appeal. Fed. R. Civ. P. 62(c). A motion brought under Rule 62(c) is subject to the same four criteria as a motion for preliminary injunction. *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir. 1977). The moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) (per curiam) (citing *Holiday Tours*, 559 F.2d at 843–44).

It "remains an open question" in the D.C. Circuit how trial courts are to weigh those four factors in evaluating a motion for injunctive relief. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). This Circuit has long adhered to the "sliding scale" approach, whereby "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392, 398 (D.C. Cir. 2011). In the context of a motion under Rule 62(c), that means a party may make up for a lesser showing of a likelihood of success as long as it presents a "substantial case" on appeal and makes a strong showing on the other three factors. *Holiday Tours*, 559 F.2d at 843–44; *Sherley*, 644 F.3d at 392–93. Ultimately, a court asks whether all four factors "taken together" favor a preliminary injunction. *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

Some judges of the D.C. Circuit have expressed the view that the Supreme Court's decision in *Winter* supplants the "sliding scale" approach, and a movant cannot obtain an injunction without showing "*both* a likelihood of success *and* a likelihood of irreparable harm." *Sherley*, 644 F.3d at 392. The Circuit has not, however, expressly disavowed adherence to the sliding scale approach. Thus, the open question remains "whether the 'likelihood of success' factor is 'an independent, free-standing requirement,' or whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a 'serious legal question' on the merits." *Aamer*, 742 F.3d at 1043 (quoting *Sherley*, 644 F.3d at 393, 398).

This court need not resolve that question here, for whether the court treats Plaintiff's likelihood of success as an independent, freestanding requirement or evaluates all four injunction factors on a sliding scale, the result is the same: Plaintiff has not demonstrated that it is entitled to an injunction pending appeal.

## II. DISCUSSION

### A. Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits

Plaintiff advances two reasons why it has demonstrated a likelihood of success on the merits despite the court having ruled against it. First, it contends that the court failed to address its primary argument as to why the November 2016 Letter constituted a legislative, rather than an interpretive, rule. Second, Plaintiff submits that the case presents a close legal question in an ambiguous area of the law, which should cut in favor of granting injunctive relief pending appeal. The court addresses each argument in turn.

#### 1. Whether the FTC's November 2016 Letter Substantively Amends Prior Regulations

Plaintiff asserts that it has made out a substantial case on the merits because the FTC's November 2016 Letter can only be properly understood as a legislative rule that worked a

substantive change in the law governing the telemarketing industry. Plaintiff contends that "this [c]ourt did not squarely address [its] principal argument": "Because the FTC's prohibition on any outbound telemarketing call that delivers 'a prerecorded message' (the 'robocall prohibition') cannot reasonably be interpreted to prohibit soundboard calls, the November letter cannot be justified as merely an interpretation of the robocall prohibition." Pl.'s Mot. at 4. Stated another way, Plaintiff argues that "the [robocall] prohibition cannot fairly be understood to authorize the FTC to prohibit calls made using soundboard technology." *Id.* at 6.

Contrary to Plaintiff's contention, the court did not "stop[] short" of addressing Plaintiff's "principal argument." *Id.* at 4, 8. The court recognized that the dividing line between legislative and interpretive rules—albeit not a bright one—is exactly where Plaintiff would draw it in this case. As the court wrote: "The distinguishing characteristic between the two [types of rules], therefore, is whether the new rule effects a 'substantive' regulatory change to the statutory or regulatory regime." *Soundboard Ass'n*, 2017 WL 1476116, at *10 (internal quotation marks omitted). Or, as the Circuit stated in *U.S. Telecom Association v. FCC*: "[F]idelity to the rulemaking requirements of the APA bars courts from permitting agencies to avoid those requirements by calling a substantive regulatory change an interpretative rule." 400 F.3d 29, 35 (D.C. Cir. 2005).[1] By finding the November 2016 Letter to be an interpretive rule, the court correlatively concluded that the Letter did not effect a substantive change to the regulatory regime. Indeed, the court expressly held that the November 2016 Letter "does not supplement or effect a change to the statutory or regulatory scheme applicable to telemarketers." *Soundboard*

---

[1] Plaintiff cites various cases for the proposition that an agency rule that exceeds the scope of an existing legislative rule is legislative. Pl.'s Mot. at 7, 9 (citing *AT&T Corp. v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016); *Natural Resources Defense Council v. EPA*, 643 F.3d 311 (D.C. Cir. 2011); and *American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106 (D.C. Cir. 1993)). The court does not quibble with that precedent. The controlling inquiry in deciding whether the November 2016 Letter is a legislative rule under this test nevertheless remains whether it effected a substantive change to the regulatory regime. *See U.S. Telecom Ass'n*, 400 F.3d at 35.

[2] Plaintiff cites to passages within the preamble to the FTC's 2008 rulemaking, which led to the robocall regulation,

*Ass'n*, 2017 WL 1476116, at *11. Plaintiff's repeated insistence that it did so does not change that result.

Little, if anything, about the November 2016 Letter supports Plaintiff's position. The FTC did not arrogate to itself powers beyond those granted by Congress. The Telemarketing and Consumer Fraud and Abuse Prevention Act authorized the FTC to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices" and to enforce them. 15 U.S.C. §§ 6102(a)(1), 6105. Specifically, Congress directed the FTC to adopt rules providing, among other things, that "telemarketers may not undertake a pattern of unsolicited telephone calls which the reasonable consumer would consider coercive or abusive of such consumer's right to privacy." *Id.* § 6102(a)(3)(A). The FTC staff's issuance of the November 2016 Letter fits comfortably within that broad statutory authority. Plaintiff does not contend otherwise.

Nor did the Letter expand the scope of the FTC's authority under its own regulations to set restrictions regarding the delivery of "prerecorded messages." The regulations declare it an "abusive telemarketing act or practice and a violation of this Rule for a telemarketer" to "initiat[e] any outbound telephone call that delivers a prerecorded message" without first obtaining "an express agreement, in writing" from the consumer. 16 C.F.R. § 310.4(b)(1)(v). The November 2016 Letter does not stray beyond the outer boundaries of that provision. The FTC did not, for instance, declare in the Letter that it could impose the written-consent requirement on non-telemarketing calls or that it could regulate telemarketing calls that do not deliver prerecorded messages. Such changes unquestionably would have constituted a substantive change to the regulatory regime and required notice and comment to implement.

5

The November 2016 Letter also does not require a strained reading of the regulation's plain text in order to apply it to soundboard calls. Not even Plaintiff disputes that the November 2016 Letter applies the robocall regulation only to soundboard technology that is used to make (1) "outbound" (2) "telephone call[s]" that (3) "deliver[]" (4) a "message." *Id.*; *see* Pl.'s Reply, ECF No. 25 [hereinafter Pl.'s Reply], at 2 ("Of course soundboard calls deliver messages."). The nub, of course, is whether a soundboard telemarketing call is "prerecorded," as that term is used in the regulation. Even as to that question, however, Plaintiff does not dispute that soundboard technology makes use of prerecorded snippets, or audio clips, to communicate with a consumer. *See* Pl.'s Reply at 1–2 (stating that "soundboard uses prerecorded sounds, words, phrases, and sentences to form messages") (internal quotation marks and alteration omitted). Thus, Plaintiff does not seriously contend that soundboard calls satisfy, at least facially, the constituent elements of the robocall regulation.

Plaintiff nevertheless argues that soundboard calls "are plainly not the type of communications the robocall prohibition was crafted to prevent" because, unlike the traditional one-way robocall, soundboard calls involve a two-way communication. *See* Pl.'s Mot. at 6; *see also* Reply at 2. That argument does not, however, support Plaintiff's position that the November 2016 Letter effected a *substantive* change to the robocall regulation, making it a legislative rule. Rather, it is a claim that the Letter is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and, more specifically, that the application of the robocall regulation to soundboard technology "is 'plainly erroneous or inconsistent' with the plain terms of the disputed regulations." *Everett v. United States*, 158 F.3d 1364, 1367 (D.C. Cir. 1998) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Plaintiff, however, explicitly *disclaimed* that argument. *See* Pl.'s Reply, ECF No. 12, at

14 ("SBA's point is not to persuade this Court to vacate the November 10 letter as arbitrary and capricious."); Oral Arg. Tr., ECF No. 24, at 4 ("We haven't asserted an arbitrary and capricious claim[.]"); *see also* Compl., ECF No. 1 [hereinafter Compl.], at ¶¶ 64–83. And, as a result, the FTC never had a chance to fully respond to it. Plaintiff cannot obtain injunctive relief pending appeal on a claim that it neither pleaded in its Complaint nor raised in its summary judgment motion.

Plaintiff's attempt to distinguish this case from *Flytenow, Inc. v. FAA*, 808 F.3d 882, 889 (D.C. Cir. 2016), upon which the court relied, *see Soundboard Ass'n*, 2017 WL 1476116, at *11, fares no better. Plaintiff argues that "the FAA letter [in *Flytenow*] was within the bounds of the regulation it purported to interpret—i.e., the term 'common carriers,' as used in the FAA's regulations, is broad enough that it could reasonably be interpreted to cover recreational pilots like the *Flytenow* plaintiffs"—whereas "the term 'prerecorded message,' as used in the robocall prohibition, is not so broad that it can reasonably be understood to encompass calls made using soundboard technology." Pl.'s Mot. at 8 n.3. Plaintiff nowhere explains, however, why the term "prerecorded message" is so constrained that it cannot possibly encompass soundboard technology. Plaintiff does not, for instance, point to any statutory, regulatory, or ordinary definition of "prerecorded message" that unambiguously establishes the term's meaning and would squarely foreclose the FTC's interpretation.[2] Nor does Plaintiff cite any prior judicial or FTC ruling or opinion that clearly circumscribes the outer boundaries of what constitutes a "prerecorded message." In the absence of such definitive guidance, the FTC did here precisely

---

[2] Plaintiff cites to passages within the preamble to the FTC's 2008 rulemaking, which led to the robocall regulation, as evidence that the FTC intended for the term "prerecorded message" to reach only a one-way communication of prerecorded information. *See* Pl.'s Reply at 2–3. Although the "preamble to a regulation is evidence of an agency's contemporaneous understanding of its proposed rules," it "is not controlling over the language of the regulation itself." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999). In any event, because Plaintiff expressly disavowed the claim that the November 2016 Letter was an arbitrary and capricious application

7

what the FAA did in *Flytenow*—it construed a rule it administers and applied it to the evidence before the agency. Such an exercise of agency authority is not a legislative act. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S.___, ___, 135 S. Ct. 1199, 1203 (2015).

### 2. Whether the Law's Ambiguity Warrants Entry of a Preliminary Injunction

Plaintiff also submits that the case law guiding the court's distinction between legislative and interpretive rules is so ambiguous as to warrant the award of an injunction pending appeal. The court disagrees. The fact that case law addressing the legislative-interpretive distinction is "quite difficult and confused," *Soundboard Ass'n*, 2017 WL 1476116, at *10 (quoting *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014)), does not favor granting injunctive relief in this case. *Contra* Pl.'s Mot. at 11–12. It is true that the Supreme Court has observed that the distinction is hardly clear cut and is "the source of much scholarly and judicial debate." *Perez*, 135 S. Ct. at 1204. Yet, the mere fact that the case law is marked by some lack of clarity cannot, by itself, support a substantial case on the merits to warrant injunctive relief. Regardless, here, the court found that the November 2016 Letter is a "quintessential interpretive rule" because it "communicates to the telemarketing industry the agency's view that an existing regulation now applies to a particular form of telemarketing technology as currently used by the industry." *Soundboard Ass'n*, 2017 WL 1476116, at *11. Accordingly, any ambiguity in the case law does not cut in favor of a preliminary injunction in this case.

### B. The Other Factors Do Not Favor Granting an Injunction

The remaining factors the court must consider—irreparable harm, balancing the equities, and consideration of the public interest—do not weigh so strongly in favor of injunctive relief that they make up for Plaintiff's deficient showing of a likelihood of success.

---

of the robocall regulation, the question of how to weigh the preamble's language in interpreting the term "prerecorded message" was not squarely before the court.

*1. Irreparable Harm*

To show irreparable harm, plaintiff must demonstrate injury that is "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (emphasis and internal quotation marks omitted). Furthermore, it is "well settled that economic loss does not, in and of itself, constitute irreparable harm," except "where the loss threatens the very existence of the movant's business." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *accord John Doe Co. v. CFPB*, 849 F.3d 1129, 1134–35 (D.C. Cir. 2017).

Plaintiff's case for irreparable harm is uncertain, at best. Plaintiff claims that implementation of the November 2016 Letter will lead to the "destruction of a whole industry," marks "the end of soundboard in the telemarketing sales industry," and will force its member companies "to lay off many of their employees and, in most cases, cease soundboard-related operations altogether." Pl.'s Mot. at 12. The full record is more equivocal. The November 2016 Letter does not reach all uses of soundboard technology. For example, it does not cover the use of soundboard technology to handle *inbound* customer service calls, which Plaintiff's counsel told the FTC is "the fastest growing segment for SoundBoard Technology." Def.'s Opp'n to Pl.'s Appl. for Prelim. Inj., ECF No. 11 [hereinafter Def.'s Opp'n], Ex. 3, ECF No. 11-3 [hereinafter Def.'s Ex. 3]. It also does not reach every kind of outbound call. Telemarketers still can use soundboard technology for, among other things, political calls, survey calls, pure informational calls, and certain charitable fundraising calls. *See* Compl., Ex. 1, ECF No. 1-2 [hereinafter Nov. 2016 Letter], at 4. These other uses are far from trivial. Plaintiff reported to the FTC in September 2016 that, of the 20,000 world-wide call center seats that use soundboard

9

technology, 8,000—or less than half—are engaged in traditional telemarketing activities. Def.'s Ex. 3. Those numbers are backed up by a perusal of Plaintiff's member's websites, which advertise the use of soundboard technology for inbound calls and other types of calls that do not fall under the robocall regulation. *See* Def.'s Opp'n, Ex. 4, ECF No. 11-4; Def.'s Opp'n, Ex. 5, ECF No. 11-5. Accordingly, it is far from clear that allowing the November 2016 Letter to take effect will, as Plaintiff claims, destroy the soundboard industry.

It is true that the Letter's inclusion of a compliance deadline, now moved to May 19, 2017, will force Plaintiff's members to pick among unattractive options. They will have to decide whether to expend capital to come into compliance; invite an enforcement action and try to convince the Commission that the staff's interpretation of "prerecorded message" is wrong; or abandon outbound telemarketing altogether. *See Soundboard*, 2017 WL 1476116, at *8.[3] Such a vexing dilemma, however, is not at all unusual. Agency decisions often give rise to tough choices and can cause economic consequences—even substantial ones—for regulated entities. Such costs do not, however, rise to the level of irreparable harm. As Judge Moss recently observed: "[A] contrary conclusion would mean that, in most challenges to significant regulatory actions, the challenging party would be entitled to an injunction pending appeal, even if the district court had already concluded that the challenge is without merit and others would be harmed by the requested relief. That is not the law." *See Nat'l Ass'n for Fixed Annuities v. Perez,* No. 16-cv-1035, 2016 WL 6902113, at *4 (D.D.C. Nov. 23, 2016). Therefore, Plaintiff has not carried its burden of showing irreparable harm.

---

[3] Plaintiff has a fourth choice, although one that would not necessarily ameliorate the risk of an enforcement action—it can petition the full Commission for "issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). *See generally* 15 U.S.C. § 57a(a)(1)(A) (authorizing the Commission to commence rulemaking to prescribe "rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce"); 16 C.F.R. § 1.9 (providing that the Commission can commence a "[t]rade regulation rule proceeding" "upon its own initiative or pursuant to written petition filed with the Secretary by any interested person stating reasonable grounds therefor").

## 2. *The Balance of Equities and the Public Interest*

Plaintiff likewise has not shown that the balancing of equities or the public interest favors granting an injunction. The balancing of equities requires a court to weigh the harm that the movant will incur if the injunction is denied against the harm the defendant will suffer if the challenged action is enjoined. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). Here, the FTC's harm and the public interest "are one and the same, because the government's interest *is* the public interest," *id.*, which leads the court to consider the third and fourth factors in tandem.

At most, Plaintiff has demonstrated that the public and private interests stand in equipoise. Plaintiff has shown that, unless the court grants injunctive relief, its members will suffer some economic harm and some number of its members' employees may be laid off. That harm, however, must be counterbalanced against the harm the public would suffer if the court were to grant the injunction. The public has an interest in not receiving unwanted calls that disturb the tranquility of the home. *See Soundboard*, 2017 WL 1476116, *14. The FTC found, after an investigation, that "a significant percentage of the total number of call center seats utilizing soundboard technology are used to make telemarketing or lead generation calls," which "are indistinguishable from standard lead generation robocalls that are governed by the [robocall regulation] and are the subject of a large volume of consumer complaints and significant telemarketing abuse." Nov. 2016 Letter at 3. Because granting the injunction would mean that the public would remain susceptible to the very telemarketing complaints and abuses that the FTC sought to address through the November 2016 Letter, the public interest weighs against granting injunctive relief.

Accordingly, having considered all four *Winter* factors, the court concludes that, even applying a sliding scale, Plaintiff is not entitled to an injunction pending appeal. Therefore, the court denies Plaintiff's Motion.

Dated: May 10, 2017

Amit P. Mehta
United States District Judge